NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—
October, 1880.

MATTER OF BARRÉ.

*In the matter of the application of* LAURA G. BARRÉ,
*an infant, for the appointment of a guardian.*

The mother of a minor, in the absence of a father, has the right to influ-
ence and direct the conduct, residence, education, occupation and
associates of her child.

Although, by section 2821 of the Code of Civil Procedure, the surrogate's
court has authority to appoint a guardian of an infant whose parents
are living, such authority should not be exercised except in cases where
the parents appear to be unfit for the control of, or to have interests
adverse to the infant.

The petitioner, an infant aged nineteen years, had become alienated from,
and abandoned the home of her mother, who was willing and able to pro-
vide for her, and against whose wish she insisted on associating with a
theatrical manager of inferior plays, as an actress. She prayed that
one D., at whose house she had interviews with the manager, be ap-
pointed guardian of her person and estate. *Held,*

1. That in the absence of evidence to impugn the good character and ability
of the parent, or to show that she had forfeited her parental authority,
it would be judicial usurpation for the court to intervene between her
and her child, and the petition should be dismissed.

2. That this result was not altered by the fact that on the hearing the
mother withdrew her objections to the appointment of the proposed
guardian, it appearing that the proceeding was an effort to set the
mother's authority at defiance.

THIS was an application by an infant for the appoint-
ment of a guardian of her person and estate.

The petition set forth that the petitioner was nine-
teen years old, and entitled to property consisting of her
wardrobe, books and plays ; that she had no testament-
ary or special guardian ; that it was necessary that
some person should be appointed guardian of her per-

son and estate, and asked that Mary C. Davis, who consented to act in that capacity, be appointed such guardian.

The mother filed objections to the appointment, alleging, among other things, that Mrs. Davis was in no way related to the minor, and was not a suitable person to be appointed such guardian, and that she, the mother, was able and willing to support and care for her daughter.

On those objections, the matter was referred to a referee, to take proof thereof, and the referee reported in substance, that the objections to Mrs. Davis had been withdrawn, and had not been sustained.

The testimony, as returned by the referee, showed that, very nearly two years past, the minor, against the advice, but with the reluctant consent of her mother, had engaged as an actress, under the instruction of, and associated with one McQuade, a so called theatrical manager of inferior plays ; and that the company with which McQuade and the minor were connected, traveled through the country, and that the minor on several occasions communicated with her mother, and asked for means to relieve her wardrobe and luggage from the lien of hotel-keepers' bills, as she had not been paid her wages, and her employer was unable to pay, and that her mother furnished her some means to relieve her embarrassment ; that during the past spring, her mother, with a second husband, commenced housekeeping in this city, and the minor was persuaded to return to her mother's house, where she remained for a time, but as it would seem, receiving occasional visits of McQuade, and studying and rehearsing certain plays; and that a diffi-

culty arose between the mother and daughter, by reason of the daughter's determination to enter into a contract with McQuade, for her services as an actress, and which her mother remonstrated against, expressing her distrust and dislike of McQuade, and the impropriety of her daughter's name being associated with his in any further theatrical enterprise.

It also appeared that in Williamsburg, at one time, they had played some engagement, and that after the engagement was concluded, McQuade and the minor remained for a considerable time at a hotel there; against which her mother remonstrated, but without effect.

The mother testified to her ability and willingness to support her daughter and complete her education; but the daughter left her home in this city, and went to the house of Mrs. Davis, where she was in the habit of seeing McQuade frequently, and where her mother was, on one occasion, denied access to her.

Subsequently Mrs. Davis sent for an attorney, who, after consultation with the parties, arranged to take the petitioner from Mrs. Davis' house, without the knowledge of her mother, and she was accordingly taken in a carriage to New Jersey, but soon after returned to Mrs. Davis' house; and this proceeding appeared to have been initiated under the advice of said attorney.

After this, the daughter sent a message, by a servant of Mrs. Davis, to her mother's house, asking that her clothing should be sent to her there, which was not done, and the attorney went to the house and demanded the clothing, which the mother refused to give up, ordering him out of the house, but which was taken to her on the advice of her stepfather.

It further appeared that the mother called upon Mrs. Davis, and remonstrated with her in the matter, and expressed her unwillingness to have her daughter enter into any engagement, or associate further with Mc-Quade; also, that Mrs. Davis stated that the counsel who had been employed in the proceedings had been engaged by McQuade, who had undertaken to pay them for their services.

After those facts had been proved before the referee, at the request of the mother the objections which had been filed were withdrawn, and thereafter some testimony was given, and three affidavits filed in behalf of the petitioner, tending to show the good character of Mrs. Davis, and her fitness to be guardian of the petitioner.

A. S. CUSHMAN, *for petitioner.*

Mr. FULLERTON, *for objector.*

THE SURROGATE.—It is claimed, in behalf of the minor, that, the objections having been withdrawn, the appointment of Mrs. Davis, as guardian of the minor, should follow as of course; while, on the other hand, it is claimed that it is the duty of the Surrogate to consider the proof, and to determine on that proof what, in his opinion, will best subserve the interests of the minor, consistent with the rights of the mother.

The above facts establish to my mind conclusively, that the conduct of Mrs. Davis, and of her counsel, was an inexcusable and unlawful interference with the legitimate authority of the parent over the custody of her infant child, and that there is no evidence to impugn the good character and pecuniary ability of the parent, nor

any to show that she has in any manner forfeited her parental authority over the daughter; it seems to me that it would be nothing short of judicial usurpation to intervene between the parent and the child, under the circumstances of this case.

It needs no argument to show that the mother, in the absence of a father, has the right to influence and direct the conduct, residence, education, occupation, and associates of her infant child, and I see nothing in this case, though she has unwisely, doubtless, yielded to the importunities of her daughter, to justify the conclusion that she has surrendered that authority.

The letter by the mother to her counsel, asking him to withdraw from this contest, contains internal evidence that she did not voluntarily withdraw, but that she was constrained to do so by the apparent alienation of her daughter's confidence and affection, and her unwise and inexcusable association with those who were not her real friends; and hence, I cannot escape the conviction that it is my duty to investigate the facts of the case, and only in a clear case to supplant a parent in her authority over her children, and that such apparent surrender on the part of the mother does not relieve this court of its responsibility as the guardian of her true welfare.

I am aware that, by section 2821 of the new Code, authority is vested in this court to appoint a guardian of an infant, whose parents are living; but it is manifest that that authority should never be exercised except in cases where parents appear to be unfit for the control of their infant children, or where they have interests adverse to such minors.

It is true that there is no proof in these proceedings to justify any adverse conclusions respecting the good character of Mr. McQuade, but if I am right in the conclusion that the mother's authority over the child is *unquestionable*, her *caprices* in that regard are entitled to respect by the daughter, and her authority as the mother to submission by her.

It is quite apparent from the whole case that the effort to procure the appointment of Mrs. Davis as the guardian of the person and property of the minor is to enable her to contract through her guardian with Mr. McQuade, and set the authority of the mother at defiance.

Petition dismissed.